**MOBIL OIL CORPORATION,**
Plaintiff–Appellant,

v.

**ATTORNEY GENERAL OF the COMMONWEALTH OF VIRGINIA,**
Defendant–Appellee,

and

**Commissioner of Agriculture and Consumer Services of Virginia,**
Defendant.

**No. 90–2740.**

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1991.

Decided July 9, 1991.

As Amended Aug. 6, 1991.

Thomas Glascock Slater, Jr., Hunton & Williams, argued (Michael J. Lockerby, Sondra J. Tomlinson, Scott G. Crowley, R. Hewitt Pate, Hunton & Williams, on brief), Richmond, Va., for plaintiff-appellant.

Gregory E. Lucyk, Sr. Asst. Atty. Gen., argued (Mary Sue Terry, Atty. Gen. of Va., K. Marshall Cook, Deputy Atty. Gen., Patrick R. Bynum, Jr., Sr. Asst. Atty. Gen., Eric K.G. Fiske, Jeffrey A. Spencer, Asst. Attys. Gen., on brief), Richmond, Va., for defendant-appellee.

Before HALL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and GODBOLD, Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Mobil Oil Corporation ("Mobil") appeals the district court's dismissal of its declaratory judgment action for failure to present a justiciable case or controversy. *Mobil Oil Corp. v. Attorney General*, 747 F.Supp. 1173 (E.D.Va.1990). We believe that Mobil's predicament—submit to a statute or face the likely perils of violating it—is precisely why the declaratory judgment cause of action exists. Accordingly, we reverse and remand.

### I.

In its 1990 session, the Virginia legislature made significant amendments to the Virginia Petroleum Products Franchise Act ("VPPFA"), Va.Code §§ 59.1–21.8 *et seq.* These amendments went into effect July 1, 1990. On June 29, 1990, Mobil filed this suit in district court, seeking declaratory and injunctive relief. Mobil contends that the amendments are unconstitutional under a variety of theories, including preemption by the federal Petroleum Marketing Practices Act. 15 U.S.C. §§ 2801 *et seq.*

The challenged provisions include:

(1) § 59.1–21.16:2(C), prohibiting "purchase or sales quotas" in new or renewed franchise agreements;

(2) § 59.1–21.11(1), prohibiting minimum hours provisions of "more than sixteen consecutive hours per day, [or] more than six days per week," unless the outlet "participate[s] in the travel services signing program of the Virginia Department of Transportation";

(3) § 59.1–21.11(6), requiring "commercially fair and reasonable" rents "uniformly applied to all similarly situated dealers of the same refiner in the same geographic area" and that franchise renewals be for a minimum term of three years;

(4) § 59.1–21.11(4), precluding franchisors from limiting the number of stations operated by a single dealer;

(5) § 59.1–21.11(7), limiting credit card fees chargeable by franchisors; and

(6) § 59.1–21.16:2(A), which created a one-year moratorium prohibiting refiners from opening or operating any new outlets using the refiner's own salaried personnel, "except on property purchased or under option to purchase by March 1, 1990." In other words, for a full year after the VPPFA amendments went into effect, a refiner could not open and directly operate new retail outlets with its own personnel in order to circumvent the restrictive state franchising provisions.

The amendments also create a stiff civil remedy for violations of VPPFA: $2,500 liquidated damages, *plus* actual damages and attorney's fees. § 59.1–21.12. Furthermore, "[n]otwithstanding any other provisions of the law to the contrary, the Attorney General may investigate and bring an action in the name of the Commonwealth to enjoin any violation of [VPPFA and three other statutes]." Va. Code § 59.1–68.2.

Rather than violate the law or capitulate to it, Mobil filed this suit against the state's enforcement officer (the Attorney General)[1] and simultaneously notified its franchisees that it would not enforce the provisions in the franchise agreements that violate the amendments to VPPFA until resolution of the litigation.

The Attorney General did not answer the complaint, but instead moved to dismiss under Fed.R.Civ.Pr. 12(b)(1) for lack of subject matter jurisdiction. The district court dismissed the action for failure to present a "case or controversy." Mobil appeals.

## II.

■ A district court may, in its discretion, refuse to issue a declaratory judgment. *White v. National Union Fire Insurance Co.*, 913 F.2d 165, 168 (4th Cir. 1990). Therefore, the Attorney General

posits, the standard of review is abuse of discretion. We disagree. The district court did not exercise its "prudential" power to "refuse to issue a declaratory judgment"; it dismissed a declaratory judgment action for failure to meet the constitutional requirement of a "case or controversy." Review is *de novo*. *See id.* at 167–169 (explaining differences between "constitutional" and "prudential" inquiry).

■ We think that Mobil's case is precisely the one for which the Declaratory Judgments Act was designed. Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.

Article III of the Constitution limits the federal courts' jurisdiction to "cases and controversies." In a capsule, there must be a dispute (no moot, unripe, or "political" questions) between the parties (plaintiff must have standing; defendant must be able to provide relief). Fifty years ago, the Supreme Court stated the Article III test for declaratory judgment actions:

> [T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

The district court did not, in ruling on the Rule 12(b)(1) motion, read the complaint in a light most favorable to Mobil. Therefore, the court did not feel compelled to credit Mobil's assertions that it has suffered pecuniary damage by complying with the new amendments. In support of its holding, the court cited *Thigpen v. United States*, 800 F.2d 393 (4th Cir.1986). *Thigpen* was a Federal Tort Claims Act case.

1. The suit also named the Commissioner of Agriculture and Consumer Services, who was later dismissed. Mobil does not appeal this dismissal.

The government moved to dismiss under Rule 12(b)(1) because, it asserted, the alleged tort was intentional. This court held that a trial court is not bound by the allegations of the complaint, and may resolve factual issues when it needs to in order to rule on jurisdiction. In *Thigpen*, the district court took evidence in the form of affidavits and live testimony from the plaintiffs, and then ruled that it had no jurisdiction. Mobil does not dispute that the district court could have done the same thing here, but it did not. The Attorney General did not answer the complaint and presented no sworn testimony to dispute the facts alleged. In such a case, the facts alleged must be accepted. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982).

The gravamen of the district court's opinion and the Attorney General's argument is that unless Mobil can show that the Attorney General will enforce the statute, there is no dispute with the Attorney General. The Attorney General has not, however, disclaimed any intention of exercising her enforcement authority.[2] In short, Mobil should violate the law and wait to see what happens; the Attorney General knows, but will not say, and until she does, there is no dispute.

This argument is apparently a favorite of the Virginia Attorney General. In *American Booksellers Association v. Commonwealth,* 802 F.2d 691 (4th Cir.1986), *questions certified,* 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782, *vacated on other grounds,* 488 U.S. 905, 109 S.Ct. 254, 102 L.Ed.2d 243 (1988), Virginia argued that booksellers could not challenge a new state antipornography law until someone broke it and was punished. This court brushed the argument aside in a footnote (802 F.2d at 694 n. 4):

> The facts of this case distinguish it from our recent decision in *Doe v. Duling,* 782 F.2d 1202 (1986), which challenged on privacy grounds a nineteenth century fornication statute which had not been enforced in private homes for years, if not decades. In the instant case, the amendment is newly enacted. It would be unreasonable to assume that the General Assembly adopted the 1985 amendment without intending that it be enforced.

The Supreme Court agreed (484 U.S. at 393, 108 S.Ct. at 642):

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of the statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.

The Supreme Court's comments in *American Booksellers* apply squarely to this suit. We see no reason to assume that the Virginia legislature enacted this statute without intending it to be enforced. Mobil has certainly alleged "an actual and well-founded fear" that the law will be enforced, and has in fact "self-censored" itself by complying with the statute, incurring harm all the while.

The Attorney General also argues that the act gives her discretionary enforcement authority, and is intended to be enforced by private suits. This assertion, even if true, is irrelevant. Whether Mobil has a dispute with its franchisees[3] does not bear on whether it has a dispute with the Attorney General. Moreover, in any such private suit, Mobil's position will be that the amendments to VPPFA are unconstitutional. At that point, under 28 U.S.C. § 2403(b), the Attorney General, on behalf

---

2. The Attorney General tries to distance herself from the state, but we think a dispute with a state suffices to create a dispute with the state's enforcement officer sued in a representative capacity. "[A] controversy exists not because the state official is himself a source of injury but because the official represents the state whose statute is being challenged as the source of injury." *Wilson v. Stocker,* 819 F.2d 943, 947 (10th Cir.1987).

3. In fact, the franchisees tried to intervene in this suit, but their motion was denied when the court dismissed the action. On remand, the franchisees may wish to renew their motion.

of the state, could intervene as of right to defend the constitutionality of the statute. She did so in the *American Booksellers* litigation,[4] as well as *Boyd v. Bulala*, 877 F.2d 1191 (4th Cir.1989), a case in this court that upheld the constitutionality of the Virginia cap on noneconomic medical malpractice damages. *Boyd v. Bulala* is especially significant, because the malpractice cap was a pure regulation of private disputes, while in this case the Attorney General has an independent power to enforce VPPFA.

The Attorney General also busies herself showing us that Mobil's claims are meritless. If so, she need not fear them on remand. However, the merits are wholly irrelevant to this appeal, except in a manner the Attorney General does not intend. Her willingness to attack the substance of Mobil's claims creates the odor of a "case or controversy"—precisely what she claims is absent.

Finally, the Attorney General asserts that the amendments to VPPFA do not apply to existing contracts, and Mobil's injury is therefore self-inflicted; citation to the statute is conspicuously absent. The statute actually says "[e]very agreement between a refiner and a dealer shall be subject to the [§ 59.1–21.11 provisions], whether or not expressly set forth therein." § 59.1–21.11.[5] We find no explicit limitation to future renewals. Even if it be so restricted, Mobil's injury is just deferred; it is still inevitable.

The judgment is reversed, and the case is remanded for further appropriate proceedings.

REVERSED AND REMANDED.

---

**4.** The original defendant in *American Booksellers* was the prosecuting attorney of Arlington County.

**5.** The sole exception is the "no quotas" provision, which is limited to new or renewed franchises. Mobil argues that the explicit limitation in the "no quotas" provision precludes finding implicit limitations elsewhere.