**GLENMONT HILL ASSOCIATES,**

v.

**MONTGOMERY COUNTY, MARYLAND et al.**

**No. CIV.A.DKC 2003–1037.**

United States District Court, D. Maryland.

Nov. 12, 2003.

---

Jay Paul Holland, Timothy Francis Maloney, Joseph, Greenwald and Laake PA, Greenbelt, MD, for Plaintiff.

Diane Rachael Schwartz Jones, Office of the County Attorney for Montgomery County MD, Rockville, MD, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this declaratory judgment action is Defendants' motion to dismiss, or in the alternative, for summary judgment.[1] The parties have fully briefed the issues raised by that motion and no hearing is deemed necessary. Local Rule 105.6. Based upon those issues, but for slightly different reasons that follow, the court declines to issue a declaratory judgment and Plaintiff's complaint will be dismissed.

## I. Background

Plaintiff is a residential apartment complex located in Silver Spring, Maryland. Two separate complaints, out of which this case arises, have been filed with the Montgomery County Office of Human Rights ("OHR") against Plaintiff for alleged violations of Montgomery County's Fair Housing Law ("County Fair Housing Law"). The County Fair Housing Law prohibits certain discriminatory housing practices, including refusing to rent or lease to someone on the basis of the person's source of income. *See* Montgomery County Code, Chpt. 27, Art. I, § 27–12 (2002). Both cases arise out of similar circumstances and are pending before the Hearing Examiner for Montgomery County.

The first complaint against Plaintiff resulted from a housing audit of Plaintiff's property, conducted by the OHR on February 21, 2002. In response to a complaint of discrimination, the OHR sent a "tester," posing as a potential renter, to gather information to determine whether Plaintiff was leasing its property in a manner consistent with applicable laws. The tester informed Plaintiff that he/she planned to participate in the federal Housing Choice Voucher Program ("HCVP"), previously known as Section 8 Housing. *See* United States Housing Act, § 8, *as amended,* 42 U.S.C.A. § 1437f, *et seq.* (2003). Plaintiff responded by explaining that while it did participate in the Montgomery County Rental Assistance Program, it did not participate in the HCVP or accept Section 8 housing vouchers to rent apartments. As a result of the tester's audit, the OHR initiated a Complaint of Alleged Discrimination on March 25, 2002. On September 17, 2002, a second complaint alleging discrimination based on source of income was filed by Elaine Walker after Plaintiff similarly refused to accept Ms. Walker's Section 8 housing voucher as payment for rent.

In each instance, the OHR's preliminary review resulted in a determination that reasonable grounds existed to believe that

---

1. Plaintiff's motion for leave to file Amended Complaint (paper no. 15) is unopposed and will be granted. Plaintiff's motions to file a surreply and supplemental surreply (paper nos. 12 and 14) will also be granted, inasmuch as Defendants raised new arguments in their reply.

Plaintiff engaged, and was continuing to engage, in prohibited housing discrimination. In compliance with the Montgomery County Code, each case was separately certified to the Montgomery County Commission for Human Rights ("Commission") for resolution and later referred to a Case Review Board. The Case Review Board then referred the cases to the Office of Zoning and Administrative Hearings for a hearing—on January 20, 2003 and April 8, 2003 respectively—where the matters are now pending.

On April 4, 2003, Plaintiff filed its complaint in this court seeking a declaratory judgment that § 27–12 of the County Fair Housing Law is invalid because it impermissibly seeks to compel Plaintiff to participate in the HCVP, a voluntary federal housing assistance program.[2] Defendants have moved to dismiss Plaintiff's complaint, arguing that the matter is not ripe because Plaintiff has failed to exhaust its administrative remedies and that the court should abstain from deciding the matter as an administrative hearing on the issues is pending.

## II. Standard of Review

 The Declaratory Judgment Act, 28 U.S.C. § 2201 (2002), authorizes a district court to "declare the rights and other legal relations of any interested party seeking such declaration." The purpose of issuing such a judgment is to clarify and settle the legal relations between the parties and a declaratory judgment should be issued when "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 256 (4th Cir.1996). When a related state proceeding is pending, however, the

court should consider "whether the controversy 'can better be settled in the proceeding pending in the state court.' *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)." *Mutual Benefit Ins. Co. v. Lorence,* 59 Fed.Appx. 595, 597, 2003 WL 1354845 (4th Cir.2003) (affirming 189 F.Supp.2d 298 (D.Md.2002)). Thus, while a federal court is authorized to issue a declaratory judgment, it is not obligated to do so. Rather, there are circumstances in which the court may properly exercise its discretion not to declare the rights and responsibilities of the parties before it:

> Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Centennial Life,* 88 F.3d at 257 (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). In making the decision, the court may consider:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of

---

**2.** On August 1, 2003, Plaintiff filed an Amended Complaint to incorporate new legal arguments based on an Eighth Circuit decision,

*Forest Park II v. Hadley,* 336 F.3d 724 (8th Cir.2003), decided July 17, 2003.

the presence of "overlapping issues of fact or law."

*Mitcheson v. Harris*, 955 F.2d 235, 237–40 (4th Cir.1992) (quoted in *Aetna Cas. & Sur. Co. v. Ind–Com Elec.*, 139 F.3d 419, 422 (4th Cir.1998)). In some cases, the declaratory judgment action is "used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Ind–Com Elec.*, 139 F.3d at 422, (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir.1994)).

■ When a related state proceeding is pending, gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided. *Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173. Rather, a court should consider whether the controversy "can better be settled in the proceeding pending in the state court." *Id.* Such a consideration "may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there[,] ... whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*

### III. Analysis

■ Plaintiff asserts that the County Fair Housing Law, by prohibiting discrimination on the basis of source of income, forces Plaintiff to accept Section 8 housing vouchers in violation of the Federal Housing Act, an otherwise voluntary program. Plaintiff explains that its intent is not to discriminate against individuals because of source of income; rather, it has opted not to participate in the HCVP based on "legitimate objections" concerning additional requirements imposed by participation.

Although the matter is presently scheduled for a hearing before the Commission, Plaintiff requests this court to declare the law invalid because it is in conflict with the federal statute.

The Montgomery County Code provides a detailed and thorough process by which claims of discrimination are to be handled under county law. Pursuant to § 27–7, once a complaint is filed with the OHR, the director must notify the respondent of the alleged discrimination and pursue an investigation of the complaint. The OHR then issues an initial determination. If the director finds reasonable grounds to believe a violation of law has occurred, a conciliation must be attempted. If the conciliation fails, the complaint is then certified to the Commission, which refers the matter to a Case Review Board for consideration. The Case Review Board must then either dismiss, order further investigation, or set the matter for hearing by a hearing examiner or the body itself. If the matter is referred to a hearing examiner, following the hearing, the hearing examiner must make findings and recommendations to the Case Review Board. Additional arguments may be made to the Case Review Board before it renders a final decision. Unless the Case Review Board upholds the OHR's findings of no reasonable grounds, its decision is appealable by an aggrieved party to the Circuit Court for Montgomery County. This comprehensive administrative mechanism is indicative of the state's interest in having a determination regarding discriminatory practices made by a state administrative or judicial body.

■ Contrary to Plaintiff's argument, this case does not first require a determination of whether a state law is in conflict with, or preempted by, a federal law. Rather, an interpretation of the County Fair Housing Law is necessary to ascer-

tain whether it does in fact require Plaintiff to accept Section 8 housing vouchers. When a state law controls the resolution of the case, "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts." *Mitcheson*, 955 F.2d at 237. Plaintiff's request of this court to issue a declaration invalidating the County Fair Housing Law is contradictory to the strong interest in having a state body interpret and enforce a state law—an interest made even stronger in a declaratory action. *See id.* at 237–38. The presiding state bodies are much better suited to consider the nature of the alleged discrimination and there is no basis to question the qualification of the Commission, or the Circuit Court on appeal, to interpret the scope and validity of the Montgomery County Code.

Likewise, there exists a state interest, grounded in the "pragmatic concerns of efficiency and comity," in resolving all litigation stemming from a single controversy in a single court system. *Id.* at 239. To interfere with a controversy already embroiled in state proceedings is not only inefficient and contrary to the principle of comity, it will also result in an unnecessary entanglement. *See Mutual Benefit Insur.*, 189 F.Supp.2d at 303. It is not hard to imagine a number of ways such a problem could arise, particularly given that Plaintiff has not named, in this action, a complainant in one of the underlying cases. Were the court to resolve the issues before it in any way adverse to the interests of the unnamed complainant, its holding would not be binding on her in a proceeding before the Commission. *See Montgomery County v. Broadcast Equities, Inc.*, 360 Md. 438, 451–52, 758 A.2d 995 (Md.2000). Additionally, were the court to find—based on the meager record before it—that the County Fair Housing Law does in fact require Plaintiff to accept section 8 vouchers, such a finding would be rendered totally useless if—after a full review of the facts and Plaintiff's "legitimate objections"—the commission ultimately found that the county code has been improperly applied. These hypothetical illustrations reinforce the need to uphold the state's interest in having all litigation stemming from a single controversy resolved in a single court system.

Finally, Plaintiff is seeking a federal forum at a time when the state proceeding is not removable on the assertion that the state proceeding itself affects its rights, citing *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73 (4th Cir.1991). There the court acknowledged the district court's discretion to decline to entertain a declaratory judgment action. It also observed, however, in the context of finding a justiciable controversy:

> We think that Mobil's case is precisely the one for which the Declaratory Judgments Act was designed. Public policy should encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution.

*Id.* The circumstances are different in this case, however. The Mobil Oil challenge was that federal law preempted the entire state act and it sought both injunctive and declaratory relief. The State defended on the ground that it might never seek to enforce the act. Here, the County Code is not being challenged as entirely preempted, but only subject to the supremacy clause if interpreted as applying to Section 8 vouchers as a source of income. Further, a state proceeding is ongoing, providing Plaintiff with a forum to litigate its

views. Thus, Plaintiff's attempt to move the controversy from a state to a federal forum runs counter to the policy underlying the use of the declaratory judgment device and constitutes "procedural fencing."

## IV. Conclusion

Accordingly, because of the available avenues within the Maryland administrative and judicial structure to address the interpretation and application of § 27–12 of the County Fair Housing Law, this court declines to exercise jurisdiction under 28 U.S.C. § 2201 and the complaint will be dismissed.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 12th day of November, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff's motion for leave to file Amended Complaint (paper no. 15) BE, and the same hereby IS, GRANTED;

2. Plaintiff's motions to file surreply and supplemental surreply (paper nos. 12 and 14) BE, and the same hereby ARE, GRANTED;

3. The motion of Defendants Montgomery County, Maryland and Montgomery County, Commission on Human Rights to dismiss, or in the alternative, for summary judgment (paper nos. 3 and 17), BE, and the same hereby IS, DENIED;

4. The amended complaint of Glenmont Hill Associates for a declaratory judgment (paper no. 16) BE, and the same hereby IS, DISMISSED; and

5. The clerk is directed to transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.