The CENTENNIAL LIFE INSURANCE
COMPANY, Plaintiff–Appellant,

v.

Barbara POSTON; Victor Poston,
Defendants–Appellees.

No. 95–1038.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1996.

Decided June 20, 1996.

---

**ARGUED:** Eric Wayne Iskra, Spilman, Thomas & Battle, Charleston, West Virginia, for Appellant. John Frederick Cyrus, Gardner & Cyrus, Huntington, West Virginia, for Appellees. **ON BRIEF:** Charles L. Woody, Neva G. Lusk, Spilman, Thomas & Battle, Charleston, West Virginia, for Appellant. David M. Pancake, Levy, Trautwein & Pancake, Huntington, West Virginia, for Appellees.

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Judge ERVIN wrote the opinion, in which Chief Judge WILKINSON and Senior Judge BUTZNER joined.

### CORRECTED OPINION

ERVIN, Circuit Judge:

The district court dismissed Centennial Life Insurance Company's declaratory judgment action. Because a pending state action will resolve the issue raised in the federal action, along with a number of issues not raised here, we believe that the district court did not abuse its discretion. Therefore, we affirm the decision below.

### I.

Soon after Centennial Life Insurance Company issued a health insurance policy to Victor and Barbara Poston, it began to suspect that the insurance application contained material misrepresentations. A hospital requested that Centennial authorize a liver transplant for Victor Poston, and two days later the insurer rescinded the policy. The Postons objected to the notice of rescission.

On June 22, 1994, Centennial brought this diversity action in the district court, seeking a declaration that the insurance policy was void based on the Postons' fraudulent misrepresentations. On August 12, 1994, Barbara Poston initiated a state court action seeking enforcement of the policy and damages, and asserting separate and alternative claims against the insurance agent. On the same day, Poston moved to dismiss the federal action.

The district court found that the issues involved in Centennial's declaratory judgment action could be resolved as efficiently in state court as in federal court, and had in fact been raised in the state proceeding. The court thus concluded that "it should decline jurisdiction over this action in deference to the state court action."

### II.

The Federal Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). This power has consistently been considered discretionary. *See, e.g., Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *Wilton v. Seven Falls Co.,* — U.S. —, —, 115 S.Ct. 2137, 2144, 132 L.Ed.2d 214, 225 (1995); *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 324 (4th Cir.1937).

The Fourth Circuit has explained that a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Quarles,* 92 F.2d at 325 (quoting Edwin M. Borchard, *Declaratory Judgments* 107–09 (1934)). It should not be used "to try a controversy by piecemeal, or to try

particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Quarles,* 92 F.2d at 325. The Supreme Court explained that, when a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court." *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176. This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding...." *Id.; see also Mitcheson v. Harris,* 955 F.2d 235 (4th Cir.1992).

Guided by these general principles—as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts"—the Fourth Circuit has set forth a number of specific factors for district courts to consider. *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 376 (4th Cir.1994). These include:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ](iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"[; and (iv) ] whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to

achiev[e] a federal hearing in a case otherwise not removable."

*Id.* at 377.

■ Last year the Supreme Court addressed the standards under which a district court's decision to stay[1] a declaratory judgment action should be made and reviewed on appeal. *Wilton v. Seven Falls Co.,* —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Court clearly reaffirmed *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), which it described in terms similarly descriptive of the case before us: "An insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy." —— U.S. at ——, 115 S.Ct. at 2140, 132 L.Ed.2d at 220. In *Brillhart,* the district court dismissed the action because of ongoing state litigation. The *Wilton* Court understood *Brillhart* to stand for the proposition that, "at least where another suit involving the same parties and presenting opportunities for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed." *Id.* at ——, 115 S.Ct. at 2141, 132 L.Ed.2d at 221 (citation omitted). The Court concluded that district courts in fact possess rather wide discretion in making these decisions:

> Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at ——, 115 S.Ct. at 2143, 132 L.Ed.2d at 224. To whatever extent our previous decisions have implied further constraints on dis-

---

1. The Court minimized the distinction between a district court's staying of the action and an outright dismissal, because even when the federal action is stayed, a state court judgment ultimately would have preclusive effect. —— U.S. at ——, 115 S.Ct. at 2141, 132 L.Ed.2d at 221. The Court also noted, however, that "where the basis

for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Id.* at —— n. 2, 115 S.Ct. at 2143 n. 2, 132 L.Ed.2d at 224 n. 2.

trict court discretion, *see, e.g., Nautilus,* 15 F.3d at 375, those decisions must give way to the clear teachings of *Wilton.*

The *Wilton* Court further explained that a district court's decision to stay a declaratory judgment action is reviewed for abuse of discretion, finding that the Declaratory Judgment Act is best effectuated if district courts are "vest[ed] with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." —— U.S. at ——, 115 S.Ct. at 2144, 132 L.Ed.2d at 225.

### III.

■ Applying these principles[2] to the present case, we cannot find that the district court abused its discretion in dismissing without prejudice Centennial Life's declaratory judgment action. Several of the factors we have endorsed for aid in making such decisions lead to no obvious conclusion. For instance, although only state law is at issue, the relevant state law is not problematic or difficult to apply, which weakens somewhat the state's interest in having these issues decided in state court. Also, although the federal action was filed first, we decline to place undue significance on the race to the courthouse door, particularly in this instance where Centennial had constructive notice of the Postons' intent to sue, and Barbara Poston's state filing was understandably delayed by her husband's death.

One factor, however, is particularly salient here: the state court action contains a defendant and a number of issues not present in the federal action. The Postons have asserted claims against Centennial insurance agent Jack Gottlieb, based on his representations about the insurance policy and an alleged negligent failure to procure the insurance requested. Thus, although issuance of a declaratory judgment would settle part of the controversy between the Postons and Centennial Life, it certainly would not settle the entire matter. The state litigation, on the other hand, could resolve all issues, and we note that significant discovery has already been undertaken in that action. Concern for efficiency and judicial economy clearly support the district court's decision.

Finding no abuse of discretion in the decision of the district court, we affirm.

*AFFIRMED.*

---

**2.** Because our recent decisions in *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 375 (4th Cir.1994), and *Continental Cas. Co. v. Fuscardo,* 35 F.3d 963, 965 (4th Cir.1994), reviewed district courts' decisions to decline jurisdiction to hear a declaratory judgment under a *de novo* standard, we will not discuss those cases in detail here.