**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STEFAN JAYNES, a minor, by and
through his parents, Brian D. Jaynes
and Juliana F. Jaynes, and on their
own behalf,
                    *Plaintiff-Appellee,*

v.                                                          No. 00-2312

NEWPORT NEWS SCHOOL BOARD,
                    *Defendant-Appellant.*

STEFAN JAYNES, a minor, by and
through his parents, Brian D. Jaynes
and Juliana F. Jaynes, and on their
own behalf,
                    *Plaintiff-Appellee,*

v.                                                          No. 00-2575

NEWPORT NEWS SCHOOL BOARD,
                    *Defendant-Appellant.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Newport News.
Henry C. Morgan, Jr., District Judge.
(CA-99-146-4)

Argued: June 7, 2001

Decided: July 10, 2001

Before NIEMEYER and TRAXLER, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kathleen Shepherd Mehfoud, REED, SMITH, HAZEL & THOMAS, Richmond, Virginia, for Appellant. Peter W.D. Wright, Deltaville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case addresses whether a reimbursement award for educational expenses was proper under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400.[1]

Stefan Jaynes was diagnosed with autism at age two. Following the advice of a pediatric neurologist, Dr. L. Matthew Frank, Brian and Juliana Jaynes (collectively, "Parents") contacted Paces, a program specifically designed for autistic children. Paces informed the Parents that Stefan needed a referral from the local public school system. On October 8, 1993, the Parents requested a referral for special education

_____

[1] IDEA requires states that receive federal funding for the education of the handicapped to provide such children with a free appropriate public education. 28 U.S.C. § 1412(1). A free appropriate public education is provided to a child through the development of an individualized educational program ("IEP"). *Id.* § 1414. IDEA guarantees parents the opportunity to contest any matter relating to the child's IEP, including the right to due process hearings, state-level appeals, civil actions and attorneys's fees. Public schools must also provide particular and timely notification of and procedural instruction regarding such rights. *Id.* § 1415.

services from Newport News Public Schools ("Newport"), which began the assessment process on December 15, 1993. At that time, Mrs. Jaynes signed a "consent to testing" form but was not advised of her parental rights.

On February 18, 1994, Newport school officials held a meeting at which they deemed Stefan eligible for special services and developed an individualized educational program ("February IEP"). The Parents received notice of this meeting but did not attend. Although Newport was aware of Dr. Frank's recommendation that Stefan be enrolled in Paces, the February IEP provided for Stefan's placement into the Program for Educating Exceptional Preschoolers ("PEEP").[2]

Newport neither inquired as to the Parents' absence nor briefed them on the February meeting. Rather, the Parents received a notice of Stefan's IEP eligibility in the mail. Although the Parents eventually signed the IEP, thereby attesting to their receipt of an Advisement of Parental Rights form, both contend that they never received such a form and were never otherwise informed of their right to a due process hearing.

Newport neglected to carry out the February IEP until the end of May 1994, when there were only two weeks left in the school year. During this interim, the Parents repeatedly contacted Newport to request that the February IEP be carried out and that Stefan receive occupational therapy and extended school year services. Newport either ignored or denied their requests. In October 1995, Newport held a second IEP meeting, which Mrs. Jaynes attended. Although Newport had never introduced many of the objectives listed on the February IEP, Newport formulated a new IEP ("October IEP") that, without explanation, reduced the services available to Stefan. Although Mrs. Jaynes signed the October IEP, Newport later altered it without her knowledge.

---

[2]PEEP is a Newport-owned program designed for children with various disabilities. Paces is a regional public school consortium specifically designed to educate children with autism; because the Paces program is not owned or operated by Newport, Newport would have to pay Stefan's tuition to Paces.

On January 17, 1995, after realizing that Stefan was making no progress in PEEP, the Parents unilaterally removed Stefan from the public school program and placed him in a private Lovaas Applied Behavioral Analysis program ("Lovaas").[3] In late 1996, the Parents learned that they had the right to contest the IEPs in a due process hearing. On January 14, 1997, they requested such a hearing, alleging that Newport committed procedural and substantive violations of IDEA.

The local hearing officer ("LHO") found that Newport failed to notify the Parents of their right to a hearing and, based on that finding, tolled the applicable one year statute of limitations. Because Newport engaged in a pattern and practice of failing to follow the procedures set forth in IDEA, the LHO ordered Newport to indemnify the Parents in the amount of $117,979.78 for educational expenses.

Newport appealed to the state review officer ("SRO"). The SRO affirmed the LHO's decision but reduced the award based on his conclusion that the statute of limitations prevented the Parents from recovering any expenses prior to January 14, 1997, the day the Parents requested a due process hearing.

The Parents sought reinstatement of the full amount in district court. The court held that the only causes of action available to the Parents are those that accrued after July 1, 1995.[4] Finding that Newport's violations of IDEA kept the Parents ignorant of their hearing rights until sometime in 1996, the court allowed the Parents to be reimbursed for educational expenses incurred on or after July 1, 1995. Newport appeals the court's summary judgment in favor of the Parents.

---

[3]Applied Behavioral Analysis Therapy, a form of treatment for autistic preschoolers developed by Dr. Ivar Lovaas, consists of breaking down activities into discrete tasks and rewarding the child's accomplishments. *See Bd. of Educ. of the County of Kanawha v. Michael M.*, 95 F. Supp. 2d 600, 602 (S.D. W. Va. 2000).

[4]Effective July 1, 1995, the Virginia statute of limitations for personal injury actions was extended from one year to two years, applicable to causes of action accruing on or after that date. *See* Va. Code § 8.01-248.

We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

I

Newport first contends that the district court misapplied the statute of limitations. We review this legal question de novo. *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995).

The appropriate period of limitations for actions brought under IDEA is one year for claims that accrued before July 1, 1995, and two years for claims that accrued on or after that date. *Manning v. Fairfax County Sch. Bd.*, 176 F.3d 235, 239 n.2 (4th Cir. 1999).

The district court held that although claims that accrued prior to July 1, 1995, were barred, any claims arising after that date were actionable because they fell within the two year limitations period. The court then analyzed the Parents' claims to determine whether any accrued after July 1, 1995.

The court determined that the claim alleging failure to give notice of the right to and procedures for requesting a hearing fell within the two year statute of limitations. The court found that the moment the Parents received such notice—sometime in 1996—is the moment that the action accrued. Because any date in 1996 would fall within the two year limitations period, the court concluded that this claim was actionable.

Newport argues that the limitations period on the Parents' due process request started to run on October 10, 1994 (the date of the second IEP meeting) or at the latest, on January 17, 1995 (the date the Parents removed Stefan from the PEEP program). Newport contends that as of these dates, the Parents knew of the events that formed the bases of their claims and that the fact that they did not learn until much later that their injuries were actionable is irrelevant. *See Richards v. Fairfax County Sch. Bd.*, 798 F. Supp. 338, 341 (E.D. Va. 1992), *aff'd*, 7 F.3d 225 (4th Cir. 1993) (holding that IDEA claims accrue when the parents know of the injury or the event that is the basis for their claim, regardless of whether they know that the injury is actionable). Because the Parents did not request a due process hearing within one

year of either of these dates, Newport contends, their claim for reimbursement is barred.

The district court correctly applied the statute of limitations. In general, knowledge that an injury is actionable is irrelevant to the determination of when the injury arose. Here, however, Newport's failure to notify the Parents of their parental rights, in violation of statutory mandates, *is* the alleged injury. The Parents complain that because Newport neglected to inform them of their right to a due process hearing, they were deprived of the opportunity to seek recourse through such a hearing. It follows that the moment they learned they had a right to a hearing was the moment they learned Newport had a duty to inform them of such a right.

## II

Newport next challenges the court's application of the standard of review, an issue which we review de novo. *See Myles Lumber Co. v. CNA Financial Corp.*, 233 F.3d 821, 823 (4th Cir. 2000).

Courts reviewing administrative decisions in IDEA cases "are required to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings." *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 103 (4th Cir. 1992). Due weight review requires that the court afford factual findings a presumption of prima facie correctness. *Id.* If the reviewing court decides to depart from the administrative findings, it must explain its reasons for doing so. *Id.* After giving the factual findings due weight, the court is free to decide the case based on the preponderance of the evidence. *Id.*; *see also* 20 U.S.C. § 1415(i)(2)(B).

Newport argues that the court should have afforded less deference to the LHO's findings because the LHO adopted many of the Parents' proposed findings of fact and conclusions of law and failed to exercise independent judgment. In particular, Newport attacks the district court's decision to accept the LHO's finding that the Parents did not receive notice of their rights until 1996, contrary to the SRO's finding that the Parents did receive such notice. The district court, however, correctly applied the *Doyle* standard. When findings by the LHO and SRO conflict, due weight is generally given to the LHO's decision,

particularly if, as here, that decision turns on witness credibility. *See Doyle*, 953 F.2d at 105; *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 663 n.\* (4th Cir. 1998). The court independently reviewed the evidence underlying the LHO's factual findings and properly determined that those findings were supported by the record.

## III

Newport also contends that the district court erred when it determined that reimbursement for Stefan's participation in the Lovaas program was appropriate.

We review de novo a grant of summary judgment. *Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997). Although we review the district court's legal conclusions de novo, we accept its finding of facts in the absence of clear error. *Mentavlos v. Anderson*, 249 F.3d 301, 307 (4th Cir. 2001).

Reimbursement of special education expenses under IDEA is appropriate when the reviewing court finds that: (1) the public school's placement was not providing the child with a free appropriate public education; and (2) the parents' alternative placement was proper under IDEA. *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369-70 (1985). In determining whether the public school has provided a free appropriate public education, the court conducts a twofold inquiry: (1) has the State complied with the procedures set forth in IDEA?; and (2) is the IEP reasonably calculated to enable the child to receive educational benefits? *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Weschester County v. Rowley*, 458 U.S. 176, 206-07 (1982). Failure to meet IDEA's procedural requirements is an adequate ground for holding that the public school failed to provide a free appropriate public education. *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 635 (4th Cir. 1985) (citing *Rowley*, 458 U.S. at 206 n.27); *accord Bd. of Educ. of the County of Cabell v. Dienelt*, 843 F.2d 813, 815 (4th Cir. 1988).

Because we agree with the district court's finding that Newport repeatedly failed to notify the Parents of their right to a due process hearing, we affirm its holding that these procedural violations constituted failure of Newport to provide Stefan with a free appropriate

public education. For the reasons we give below, Newport's three arguments to the contrary are unavailing.

First, Newport argues that it was entitled to the presumption that it provided the Parental Rights form as early as December 1993. This contention is based on (1) the fact that Newport has a practice of providing this form when a child is brought in to be evaluated and whenever an IEP is developed; and (2) the fact that the Parents signed Stefan's IEPs, both of which included language attesting that they had received the Parental Rights form.

Relying on the findings of the LHO and an independent review of the record, the district court correctly found that the Parents were unaware of their right to a due process hearing until 1996. The record shows that the Parents testified consistently and persuasively at the administrative hearing that they had never seen a Parental Rights form and had never otherwise been informed of their rights. Moreover, at least one Newport administrator admitted that she had never informed the Parents of their rights. Newport does not dispute that when it denied the Parents' requests for extra and extended school year services, and when the Parents notified Newport of their intention to remove Stefan from PEEP, it failed to notify them of their rights. *See Hall*, 774 F.2d at 634-35 (finding failure to notify despite administrator's testimony that she had explained procedural rights to the parents at an IEP meeting when school did not contest that it failed to give notice at similar points in the process). Finally, although the SRO found that the best evidence—the Parents' signatures on the IEPs—demonstrated that they had notice of their rights, the district court's decision to the contrary is based on a preponderance of the evidence and is not clearly erroneous.[5]

Second, Newport devotes much of its attention to its argument that the court erred when it failed to determine whether or not Newport was providing an appropriate education for Stefan. This contention is

---

[5]Newport asserts that even if it failed to give notice, such failure must lead to a loss of an "educational opportunity" to have legal significance. *See Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990). The LHO found that Stefan had suffered such a loss, and the record supports this finding.

irrelevant because the district court based its decision that Newport was not providing a free appropriate education on *procedural* violations of IDEA, not on *substantive* deficiencies in Stefan's program. A determination of whether the public school's program is "appropriate" is only necessary when the claim is that the IEP was not reasonably calculated to enable the child to receive education benefits. *Cf. Dienelt*, 843 F.2d at 814-15 (affirming award of reimbursement based on district court's determinations that procedural violations constituted a failure to provide the child with a free appropriate public education and that parents' alternative placement was appropriate).

Newport's third argument, that the court erred because it failed to determine that the Parents' placement of Stefan was proper, has some merit. Reimbursement is proper only upon finding both that Newport failed to provide a free appropriate education (here, based on procedural defects) *and* that the Parents' placement was proper under IDEA. *See Burlington*, 471 U.S. at 369-70. Although the district court did not make the second finding, we affirm the reimbursement award because the record supports a determination that Stefan's placement in Lovaas therapy was proper.[6] For example, the LHO concluded, based on extensive briefing, that Lovaas therapy was appropriate and had benefitted Stefan. The SRO noted that according to Dr. Frank's letter, Stefan had improved as a result of Lovaas therapy. Dr. Frank's letter reported that Stefan's "Lovaas training is having a very definite impact on his growth and development" and detailed specific examples. Finally, not only did Stefan's speech/language pathologist testify regarding Stefan's improvements, but Newport's psychologist also reported "qualitative improvement."[7]

---

[6]*Cf. Hall*, 774, F.2d 629, 636 n.7 (noting that although district court did not explicitly find parental placement was appropriate, it implicitly so found when it stated that parents proved that the costs they incurred were in connection with providing child with appropriate education).

[7]Newport takes issue with the Parents' failure to present expert testimony on Lovaas at the hearing and contends that PEEP was more appropriate than home-based Lovaas tutoring because it allowed Stefan to interact with other students, as favored by IDEA's "mainstreaming provision," 20 U.S.C. § 1412(5)(B). These arguments are unavailing. First, although there was no live expert testimony, the Parents submitted over 20 exhibits regarding the Lovaas method and elicited testimony from

IV

Finally, Newport argues that it did not waive its right to challenge the specific amount of reimbursement.

In its order granting the Parents' motion for summary judgment, the district court directed that in the event that the parties could not agree upon the amount of damages, the Parents should submit a verified claim for damages to which Newport could reply. Unable to stipulate to the amount of damages, both parties submitted briefs, but neither requested a hearing. In its brief, Newport: (1) argued that expenses for Stefan's Lovaas training should not be reimbursed because such training does not qualify as an educational program under IDEA; and (2) challenged reimbursement for particular expenses not incurred for "special education and related services" under 20 U.S.C. § 1401(a)(18).

The district court reinstated the reimbursement award of the LHO, but reduced the amount by subtracting costs incurred prior to July 1, 1995, as barred by the statute of limitations.[8] The court concluded that because Newport had neglected to challenge the amount of the reimbursement award until after summary judgment was entered against it,[9] Newport had waived such arguments.

---

Stefan's speech/language pathologist regarding Lovaas in general and its effect on Stefan. Second, although IDEA prefers mainstreaming handicapped students, that provision was meant to prevent schools from segregating handicapped students from the general student population, not to restrict parental options. *Carter v. Florence County Sch. Dist. Four*, 950 F.2d 156, 160 (4th Cir. 1991). Moreover, mainstreaming was not necessarily appropriate in this case due to the particularity of Stefan's disability.

[8]The Parents do not challenge the district court's reduction of the reimbursement amount on appeal.

[9]Both the LHO and SRO concluded that because Newport challenged only the Parents' *entitlement* to the award, and not the *amount* of the award, Newport had waived any such specific objections. The district court relied on those conclusions by the LHO and SRO as well as the fact that Newport did not initially object to the award amount before the district court, but rather had agreed to rest its case on the administrative record.

We hold that the district court did not abuse its discretion in refusing to consider Newport's new arguments. Although IDEA permits the district court to hear new evidence, we have held that such evidence is limited to that which could not have been presented before the administrative agencies. *Springer*, 134 F.3d at 666-67 (upholding district court's refusal to hear testimony when same testimony could have been introduced during local and state proceedings, but, for tactical reasons, was not). In this case, the district court faulted Newport for neglecting to challenge the award amount at any time prior to entry of summary judgment, and Newport offers no excuse for its reticence. The court correctly found that Newport made a tactical decision to forego opportunities to contest the award amount and was estopped from now patching up holes in its administrative case.

The judgment of the district court is hereby affirmed.

*AFFIRMED*